**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51678**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 13, 2026** |
| **Plaintiff-Respondent,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CATHERINE ELIZABETH | ) **OPINION AND SHALL NOT** |
| HERNANDEZ, | ) **BE CITED AS AUTHORITY** |
| | ) |
| **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge.

Judgment of restitution, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Catherine Elizabeth Hernandez appeals from a judgment of restitution.[1] We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Hernandez was living with her boyfriend, Thomas, and his mother, Janis. Hernandez reported abusive conduct to the police, and Thomas and Janis were required to leave their shared residence pursuant to a protection order. Hernandez then moved out of the shared residence and took items belonging to Thomas and Janis, placing most of the items in a storage unit. When

---

[1] Although the district court entered an "order for restitution," the district court provided that "this order may be used by the identified victim(s) as a civil judgment." Accordingly, we refer to this as the judgment of restitution.

1

Thomas and Janis returned to the residence, they reported the missing items to the police. Hernandez was charged with two counts of grand theft--one count for items belonging to Thomas and one count for items belonging to Janis. The storage unit was searched by police pursuant to a warrant and some of the missing items were found. Thomas received an insurance payout for the items not found in the storage unit.

Pursuant to a plea agreement, Hernandez entered an *Alford*[2] plea to one count of grand theft and the second count was dismissed. The agreement contained a term that Hernandez consented to pay full restitution on all charged or uncharged crimes. The State filed a motion requesting restitution for Thomas and Wilber, Thomas's insurance company's subrogation agent responsible for pursuing any legal remedy against Hernandez for the insurance payout. The district court then held a hearing to determine restitution and entered a judgment of restitution awarding $15,910.00 to Thomas and $11,373.14 to The Wilber Group, for a restitution award totaling $27,283.14. Hernandez appeals.

## II.

## STANDARD OF REVIEW

The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Torrez*, 156 Idaho 118, 119, 320 P.3d 1277, 1278 (Ct. App. 2014); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). Thus, an order of restitution will not be overturned absent an abuse of discretion. *Torrez*, 156 Idaho at 120, 320 P.3d at 1279. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

---

[2]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

## ANALYSIS

Hernandez argues the district court abused its discretion by ordering $15,910 in restitution to Thomas, contending the award erroneously included restitution attributable to items stolen from Thomas's mother, Janis. Hernandez also argues the district court abused its discretion in awarding $11,373.14 to Wilber,[3] contending there was insufficient evidence showing it is a proper victim entitled to restitution under I.C. § 19-5304(7). The State responds that Hernandez has failed to preserve her argument that the district court erred in awarding restitution. We agree.

Hernandez agreed to "pay full restitution on all charged and uncharged crimes." Pursuant to this agreement, the State filed a motion for restitution seeking $11,373.14 payable to Wilber and $17,525.44 payable to Thomas. The State attached a letter from Wilber to its restitution motion. The letter included the following claim information:

> Responsible Party: CATHERINE HERNANDEZ
> *Wilber File Number: 30359446*
> *Our Client: LIBERTY INSURANCE CORPORATION*
> Client Claim Number: 051042946
> Claim Date: 7/21/2022
> Current Claim Amount: $11373.14
> Docket Number: CR10-22-07198

(Emphasis added.)

The substance of the letter, which was addressed to the Bonneville County Prosecutor, stated: "Please see the attached documentation relating to a case we believe your office is handling. Please contact me directly with any questions." The letter was signed "Recovery Team" for Wilber. The documentation referenced in the letter was produced by Liberty Mutual Insurance, listed Thomas as the claimant and insured, a claim amount of $11,373.14, and a payment of $10,873.14 (the claim amount less a $500 deductible). These documents were admitted at the restitution hearing and form the basis of the district court's restitution award to Wilber.

The State's restitution motion also included, as attachments, itemized lists and some photographs of jewelry Hernandez was alleged to have stolen; these documents were admitted at

---

[3]    In her appellant's brief and reply brief, Hernandez refers to Wilber as "WILBUR," but also cites to a website for the company that correctly spells its name "Wilber." We assume "WILBUR" in the appellant's brief refers to Wilber, the subrogation agent for Liberty Mutual Insurance, which insured Thomas.

3

the restitution hearing. With respect to the stolen jewelry that belonged to his mother, Thomas testified that the items were willed to him and, because his mother lived with him, they were included in his insurance claim. Related to this, the prosecutor advised the district court:

> I sense that there's some concern about what is possessed by the mother as opposed to [Thomas].
>
> I mean, in that case, they're both victims in this particular case, and we'd ask that restitution be--if--if--if there would be a desire to have that restitution broken out to the two different victims, we're happy to--to take testimony on that today so that the Court can understand.
>
> Primary issue on the restitution, I think, is the value of the restitution, not necessarily who owned the items.
>
> But, if we need to adjust the- the motion to break that into who should be paid back as far as the mother or [Thomas], we're happy to do that.
>
> I think what the mother is willing to do is, if the order is to [Thomas], that she'll collect, you know, whatever is paid out to- through [Thomas].

Hernandez did not express any disagreement that the "[p]rimary issue" was "the value of the restitution, not necessarily who owned the items," nor did she argue that the restitution requested be broken down between items belonging to Thomas and items belonging to Thomas's mother, Janis. Rather, Hernandez's objection was limited to a complaint that the stolen items were not referenced in the charging document. It is also worth noting that, at the beginning of the restitution hearing, Hernandez advised the court: "I don't know that we really need to call witnesses. I'm not disputing the fact he says the items were taken or that he made an insurance claim." Hernandez explained her "argument [was] simply going to be over whether or not [she] is responsible for restitution on all that [is] request[ed]." Nevertheless, Hernandez agreed that testimony would be helpful to give the court a "better understanding." Thomas was the only witness called to testify at the restitution hearing. In general, Thomas's testimony provided foundation for the documents admitted as exhibits and, when asked, explanations for certain items listed on the documents.

## A.     Restitution Award to Wilber

Hernandez's only objection to the restitution request for Wilber was that Hernandez did not think it was "appropriate" to award restitution to an insurance company because the insurance company "could file [a] lawsuit against" Hernandez to recover its loss. Hernandez does not pursue this objection on appeal, presumably because it is contrary to the plain language of I.C. § 19-5304(1)(e)(iv), which defines victim to include a "person or entity who suffers economic loss because such person or entity has made payments to or on behalf of a directly injured victim

4

pursuant to a contract including, but not limited to, an insurance contract." Instead, Hernandez presents an entirely new argument that there was insufficient evidence to show Wilber qualified as a victim because there was "no evidence" that Wilber "paid any money" to Thomas. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Hernandez never asserted in the district court that Wilber was not a victim because it did not suffer any loss. Her preserved objection--that insurance companies do not qualify as victims--is substantively different than her new assertion that there was no evidentiary connection between Wilber and the restitution order. As such, this claim is not preserved. *See State v. Wisdom*, 161 Idaho 916, 919, 393 P.3d 576, 579 (2017) (declining to address appellant's argument that district court erred in naming victim of restitution award because appellant presented argument for first time on appeal).

Even if Hernandez had properly preserved this argument for appeal, it is specious. Contrary to Hernandez's assertions on appeal, the evidence presented establishes Wilber's relationship to its client, Liberty Mutual Insurance. To the extent Hernandez believes the restitution award should have been given to Liberty Mutual Insurance instead of Wilber, Hernandez could have raised that concern below. But that concern does not establish the evidence was insufficient to support the award in the first instance. Hernandez has failed to show error in the district court's restitution award to Wilber.

## B.     Restitution Award to Thomas

Hernandez also asserts Thomas was not entitled to the entirety of the restitution awarded to him because some of the items included in the valuation belonged to his mother. Hernandez presents this argument for the first time on appeal. At the restitution hearing, Hernandez argued the district court could not order her to pay restitution for the theft of items that were not specifically referenced in the charging information; she did not present any argument regarding the proper recipient of the restitution. This new claim, raised for the first time on appeal, is not preserved.

Even if considered under the guise of a sufficiency of the evidence claim, Hernandez's challenge lacks merit. Idaho Code Section 19-5304(5) authorizes a trial court to "order the defendant to pay all or a part of the restitution ordered to the court to be distributed by the court to the victims in a manner the court deems just." There is no basis from which to conclude that the

5

district court acted outside its discretion in allowing restitution to be paid to Thomas for the contents stolen from his home that belonged to both him and his mother. Hernandez has failed to show error in the district court's restitution award to Thomas.

## IV.

## CONCLUSION

Hernandez has failed to show that the district court abused its discretion in awarding restitution. Accordingly, the district court's judgment of restitution is affirmed.

Chief Judge TRIBE and Judge Pro Tem MELANSON, **CONCUR**.